UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date & Time**
**May 9, 2023 @ 10:00 am**

-------------------------------------------------------X

In Re:

      HORGAN, INC.,

              Chapter 11
              Case No.  23-10325 (DSJ)

              Debtor.

-------------------------------------------------------X

### DEBTOR'S LIMTED OBJECTIONS TO CHANEL, INC.'S APPLICATION PURSUANT TO BANKRUPTCY RULE 2004 FOR AN ORDER DIRECTING THE PRODUCTION OF DOCUMENTS FROM, AND AUTHORIZING THE EXAMINATION OF, HORGAN INC.

**TO:   THE HONORABLE DAVID S. JONES,**
**UNITED STATES BANKRUPTCY JUDGE:**

      Horgan, Inc., the debtor and debtor in possession ("Horgan"), by its proposed

counsel, Kucker Marino Winiarsky & Bittens, LLP, as and for its limited objections to

the motion of Chanel, Inc. ("Chanel"), pursuant to Bankruptcy Rule 2004, seeking an

order directing the production of documents [1] from, and authorizing the examination of,

Horgan (the "Motion"), respectfully sets forth and alleges as follows:

### PRELIMINARY STATEMENT

      1.    On April 5, 2023, Chanel, Inc. ("Chanel") submitted an application in this

Bankruptcy Case which declares it was made pursuant to Bankruptcy Rule 2004 for an Order

directing the production of documents by Horgan and authorizing an examination of the

debtor (the "Application"). Following a written section titled "Notice" and initial remarks on

the first four pages of the Application, there is a section titled "Preliminary Statement" (four

---

[1]   The list of documents requested by Chanel which it chose to set forth in Exhibit A to its Motion (the "Document Request"), is copied in <u>Exhibit A</u> annexed to Debtor's limited objections to Chanel's Motion.

pages beginning with a page number 2).

2.    However, the Application concerning Horgan was filed contemporaneously with an application Chanel filed concerning Eairinn Aska, the debtor in Bankruptcy Case No. 23-10325-DSJ. It is possible that Chanel intended the Bankruptcy Court in considering the statements it made regarding Horgan in the Application also would consider statements by Chanel in its Preliminary Statement concerning Eairinn Aska. These included extensive remarks as to the NY Action which sought to impugn the conduct of all three of the defendants in that Action, including Horgan. This, in order to protect itself, Horgan was compelled by the circumstances created by Chanel, to include in its Preliminary Statement concerning the Application concerning Horgan an explanation clarifying that the negative comments by Chanel concerning Eairinn Aska and the NY Action are false and inaccurate.

## Chanel's False Statements Alleging Fraud

3.    In its Preliminary Statement, Chanel uses the word "fraud" to describe conduct by the debtors during the business transactions which are at the heart of the Bankruptcy Case. Chanel clearly did this in an attempt to negatively paint debtors and lend credence to its false contentions that the Bankruptcy Case is a sham and the Debtor does not deserve to seek protection in the Bankruptcy Case.

4.    In truth, there was no actual fraud and Chanel's claims lack merit.

5.    In its Preliminary Statement, Chanel makes bald contentions (for example on page 3) that there were fraudulent invoices. Chanel's contentions are false.

6.    Chanel falsely contends that the Debtor delayed the proceedings in the NY Action. This is not true. In fact, it was Chanel who delayed the NY Action. One glaring example concerns the fact that Chanel was the employer of defendant Eairinn Aska, one of the main targets of Chanel in the NY Action and the fact that Chanel's legal claims concern

business transactions in which Chanel claims that Horgan, Inc., Deirdre Horan and Eairinn Aska participated. Chanel solely possessed the vast majority of the documents at the heart of the NY Action. However, Chanel failed to produce documents in a fair and orderly manner, withheld key documents, produced some documents multiple times to create the appearance of volume, leaving enormous gaps by not producing certain key documents.

7.      It appears the withholding of documents was a strategy by Chanel to try to limit the defendants' ability to defend themselves from meritless claims by denying them access to relevant and material documents in Chanel's sole possession and control.

### Chanel's False Statements Concerning the NY Action Which are Made in Chanel's "Preliminary Statement" Concerning Eairinn Aska

8.      Chanel claims to summarize background facts and the procedural history of the civil action in the Supreme Court of the State of New York, County of New York (Index No. Index No. 155775/2020; IAS Part 17; Justice Shlomo Hagler) (the NY Action"). Chanel's statements are incomplete and inaccurate.

9.      Clearly, Chanel intended that its so-called summary would negatively paint the Debtor in the eyes of the Bankruptcy Court. Indeed, Chanel goes so far that it contends (falsely) that the Bankruptcy Case is a sham and that (allegedly) the debtor is not worthy of protection in a Bankruptcy Court proceeding. Both contentions are nefarious.

10.     The truth is that the Debtor did not engage in any actual wrongdoing, Chanel's claims to the contrary lack merit, and as to the NY Action it was in an early stage and substantial pre-trial proceedings remained in the future. Indeed, no deposition had been taken.

11.     As previously noted, Chanel falsely contends that the Debtor delayed the proceedings in the NY Action. This is not true. In fact, it was Chanel who delayed the NY Action. One glaring example concerns the fact that Chanel was the employer of defendant

3

Eairinn Aska, one of the main targets of Chanel in the NY Action and the fact that Chanel's legal claims concern business transactions in which Chanel claims that Horgan, Inc., Deirdre Horan and Eairinn Aska participated. Chanel solely possessed the vast majority of the documents at the heart of the NY Action. However, Chanel failed to produce documents in a fair and orderly manner, withheld key documents, produced some documents multiple times to create the appearance of volume, leaving enormous gaps by not producing certain key documents.

12.    As previously noted, it appears that Chanel's withholding of documents was a strategy by it to try to limit the defendants' ability to defend themselves from meritless claims by denying them access to relevant and material documents in Chanel's sole possession and control.

13.    It is no coincidence that, among the relevant and material documents which Chanel withheld during the NY Action, are expense reports and other business documents which are integral to defending against Chanel's meritless claims and periodic reports concerning business activities. In addition, Chanel withheld documents concerning the personal property of Eairinn Aska worth tens of thousands of dollars which Chanel prevented her from taking with her after her employment was summarily terminated by Chanel.

14.    The truth includes that Chanel played games with document production in the NY Action by failing to produce hard copies of documents and unilaterally engineering a 'document dump' including by way of a drop box at a site created by Chanel's attorneys in the NY Action and other documents produced only electronically. The first production, by drop box, was indecipherable to defendants. The second production, by way of an electronic production of thousands of pages included multiples of mundane documents while withholding key documents. Defendants objected. Chanel did not change its production.

4

15.     In the NY Action, Chanel's production of four or more copies of certain documents which were the same, gave a superficial impression of a meaningful production whereas there were huge gaps in the documents.

16.     The defendants sought the assistance of the Court. It did not help their efforts to resolve the disputes that the person who heard the parties' contentions during court conferences was a Part Clerk and not the judge.

17.     Perhaps, the best illustration of the fact that the statements by Chanel in its Preliminary Statement in the Bankruptcy Case are inaccurate and incomplete and cannot be relied on, is Chanel's statements which allege (falsely) that defendants on November 28, 2022 failed to comply with a court order directing a supplemental discovery production by that date.

18.     The truth is that the parties at one point in time submitted a proposed scheduling order which called for a supplemental document production subsequently on November 28, 2022. The proposed scheduling order was not endorsed by the court prior to November 28, 2022. More importantly, circumstances substantially changed prior to November 28, 2022 and the tentative deadline which had been proposed prior to November 28, 2022 no longer was prudent or fair as of that date.

19.     On October 15, 2022, William Hummell, who was defendants' sole attorney in the NY Action, suffered a stroke and was hospitalized. That day he was admitted to a hospital in Westchester County, New York to receive emergency treatment and care which was provided by the hospital and its physicians and other staff. He remained hospitalized for five and one-half days. When Mr. Hummell was released, based on the orders of the physicians who provided medical treatment during the hospitalization, he convalesced at home for two additional weeks. During that time period, he took prescribed medications and received ambulatory care from numerous physicians, including a hospital neurologist and a hospital cardiologist.

5

20.    Mr. Hummell remained with diminished capacity into November 2022.

21.    Prior to November 28, 2022, it became evident that, because of the damage caused by the stroke and the time which was lost, that it no longer made sense for a supplemental document production to be scheduled for November 28, 2022. Accordingly, Mr. Hummell prepared a letter to Justice Hagler notifying the court of his having experienced a serious medical condition, and his diminished capacity and the apparent need for a status conference to revisit the pretrial schedule and determine new dates for pretrial tasks to be performed which were reasonable under the changed circumstances.

22.    Mr. Hummell filed the letter prior to the expiration of November 28, 2022.

23.    As of the time of the filing the Court had not acted on the previously filed draft scheduling order. No such order had been signed by the Court.

24.    Mr. Hummell's requests were considered by the Court in a legal proceeding on February 1, 2023.

25.    During the interim, Chanel filed a motion seeking an order which it requested would impose sanctions on defendants for alleged failure to serve a supplemental document production by November 28, 2022.

26.    The defendants opposed Chanel's motion for sanctions.

27.    There was no factual or legal basis for Chanel's claiming there was an emergency which required a rush forward.

28.    Chanel's filing of a motion seeking sanctions could reasonably be interpreted by some as an attempt to take advantage of Mr. Hummell's suffering a stroke, and, in effect, by filing the motion seek an unfair advantage over defendants because their attorney was temporarily incapacitated.

6

29.     When Chanel's motion for sanctions was considered by the court in the NY Action during a hearing on February 1, 2023, the court denied Chanel's motion (a copy of the "*Decision and Order on Motion*" dated February 1, 2023 is the first page in Exhibit B annexed to Debtor's Limited Objections).

30.     During the hearing, Justice Hagler determined there was no violation of a court order, and Mr. Hummell acted prudently and appropriately by filing his letter, and his having suffered a stroke and the time lost while medical treatment was received and he attempted to recover was a valid basis for an extension, and that a new pretrial schedule would be adopted. (A copy of the transcript of the February 1, 2023 hearing immediately follows the Decision and Order within annexed Exhibit B) (see, for example, transcript page 4, line 1 to page 7, line 18).

31.     The court added that there was no need for sanctions because the transcript of the court conference during which the actual documents to be included in a supplemental production (and the November 28, 2022 date was identified) were set forth, was not delivered by the court reporter until mid-November 2022 (i.e., six weeks after the court conference) and defendants' counsel suffered a stroke October 15, 2022, which were a good excuse for defendants' not providing a supplemental document production by November 28, 2022 (see hearing transcript - Exhibit B, page 8, lines 13-19).

32.     Prior to the conclusion of the February 1, 2023 hearing, Chanel sought the issuance of a conditional order which would punish defendants if they did not provide a supplemental document production by a new date (hearing transcript - Exhibit B, page 10, lines 10-15). The court denied the request (see hearing transcript - Exhibit B, page 10, lines 16-19).

33.     It is no coincidence that Chanel did not provide to the Bankruptcy Court, along with its Preliminary Statement (falsely accusing the Debtor of wrongful conduct in the NY Action) a copy of the February 1, 2023 transcript. It appears Chanel did not want the Bankruptcy

Court to be able to see that the statements in paragraph 6 of Chanel's Preliminary Statement intended to impugn the Debtor are inaccurate and incomplete.

34.     Chanel's inaccurate portrayal of events on November 28, 2022 and February 1, 2023 in the NY Action was lacking in candor.

35.     Defendants respectfully submit that Chanel's decision to include inaccurate and incomplete statements in paragraph 6 of its Preliminary Statement is a valid basis for the Bankruptcy Court's viewing with skepticism or disregarding each contention of alleged fact in Chanel's Preliminary Statement.

## LIMITED OBJECTIONS

36.     On or around April 5, 2023, Chanel filed Motion [ECF Doc. No. 28]. In paragraph 11 of the Motion, Chanel states that:

> "[t]o be clear, Chanel is not seeking documents or information with respect to the Civil Action. This Application seeks documents and information strictly with respect to the property and financial condition of the Debtor's bankruptcy estate…." (Motion ¶11).

37.     (As previously noted in footnote 1 of these Limited Objections, the list of documents requested by Chanel which it chose to set forth in Exhibit A to its Motion, is copied in Exhibit A annexed to the Debtor's limited objections to Chanel's Motion.)

38.     The Debtor has conducted this case, and will continue to conduct this case, in the spirit of full disclosure.  Therefore, the Debtor has no objection to the issuance of a Rule 2004 Order, subject to the limited objection set forth below.

39.     In paragraph 1 of its Document Requests (see Exhibit "A"), Chanel defines the term "Relevant Time Period" as being "March 7, 2013 to March 7, 2023." The Debtor believes that a ten (10) year time period is overbroad and submits that the Relevant Time Period should be limited to six (6) years March 7, 2017 to March 7, 2023

since six (6) years is the limit for the prosecution of any avoidance claims under relevant New York State law, as applied under section 544 of the Bankruptcy Code, and, therefore, is the typical time for 2004 examinations of debtors. Accordingly, it appears that the Bankruptcy Court should issue an order modifying Chanel's request to encompass only the more limited time period of the following: March 7, 2017 to March 7, 2023.

40.   Paragraph number 5 of Chanel's Document Request seeking "[a]ll Documents and Communications Concerning the operation of Your business during the Relevant Time Period" is vague and overbroad. The requests could mean virtually anything ever having to do with the Debtor's business, which goes way beyond "the property and financial condition of the Debtor's bankruptcy estate." (Motion ¶11)

41.   Paragraph number 6 of Chanel's Document Request seeking "Documents sufficient to show any and all of Your employees during the Relevant Time Period" is vague, overbroad and not relevant to Chanel's inquiry into "the property and financial condition of the Debtor's bankruptcy estate." (Motion ¶11)

42.   The request made in paragraph number 9 of Chanel's Document Request seeking "[a]ll Documents and Communications relating to payments from You to Deirdre and/or to Aska (or to any entities owned by Deirdre or Aska, and/or to any member of Deirdre's or Aska's immediate family) during the Relevant Time Period, including without limitation checks, wire transfers, and minutes, notes, memoranda, or correspondence concerning deliberations or decisions by You about making or refraining from making any payments..." relates directly to the claims asserted in the prepetition action commenced by Chanel against the Debtor, and therefore, should be struck as being beyond the scope

of the Motion which seeks documents related to "the property and financial condition of the Debtor's bankruptcy estate." (Motion ¶11)

43.      The request made in paragraph 12 of Chanel's Document Request seeking "[a]ll Documents and Communications concerning "Your revenues during the Relevant Time Period" is vague, overbroad, and duplicative as it is already sought under the request in paragraph number 3 of Chanel's Document which seeks "[a]ll Documents and Communications Concerning Your tax returns and related filings from the Relevant Time Period."

44.      The requests sought forth in paragraphs 13 and 14 of the Document Request should be limited to the "Relevant Time Period." As currently written, paragraphs 13 and 14 of the Document Request do not have a time limit[2]

**WHEREFORE**, the Debtor seeks the entry of an order sustaining its limited objection to the Motion and granting it such other and further relief as seems just, proper and equitable.

**DATED:**      New York, New York
              May 1, 2023

                              Kucker Marino Winiarsky & Bittens, LLP
                              Proposed Attorneys for Horgan, Inc.

                              By:
                                William D. Hummell, Esq., Partner
                                747 Third Avenue
                                New York, New York 10017
                                Telephone: (212) 869-5030
                                Email: whummell@kuckermarino.com

---

[2] The Debtor believes that these requests were intended to encompass only the "Relevant Time Period", and the lack of a temporal limit was due to a scrivener's error.

# Exhibit A

# EXHIBIT A

## DOCUMENT REQUESTS

1.    All Documents and Communications Concerning Your financial and operating statements from the Relevant Time Period (i.e., March 7, 2013 to March 7, 2023), including without limitation bank statements, reconciliations, financial statements, profit and loss statements, and income statements.

2.    All Documents and Communications Concerning Your insurance policies from the Relevant Time Period.

3.    All Documents and Communications Concerning Your tax returns and related filings from the Relevant Time Period.

4.    All Documents and Communications Concerning Your records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Your capital stock, members, partners and proprietors during the Relevant Time Period.

5.    All Documents and Communications Concerning the operation of Your business during the Relevant Time Period.

6.    Documents sufficient to show any and all of Your employees during the Relevant Time Period.

7.    All Documents and Communications Concerning the source of any money or property acquired or to be acquired by You for purposes of consummating a plan, and the consideration given or offered therefor.

8.    All Documents and Communications relating to Your corporate organization, operation, and existence, including but not limited to articles of incorporation, by-laws, and meeting minutes.

9.      All Documents and Communications relating to payments from You to Deirdre and/or to Aska (or to any entities owned by Deirdre or Aska, and/or to any member of Deirdre's or Aska's immediate family) during the Relevant Time Period, including without limitation checks, wire transfers, and minutes, notes, memoranda, or correspondence concerning deliberations or decisions by You about making or refraining from making any payments.

10.     All Documents and Communications Concerning the liabilities listed on the Schedules.

11.     All Documents and Communications Concerning the assets listed on the Schedules.

12.     All Documents and Communications concerning Your revenues during the Relevant Time Period.

13.     All reports prepared for You by an auditor or accounting firm, including related financial statements, notes, and any supplemental schedules.

14.     Account statements, signature cards, flow charts, written descriptions, and periodic reports concerning the flow of funds for all bank, money market, investment or other accounts maintained by Horgan.

## SUBJECTS OF TESTIMONY

1.      The Documents and Communications produced by You in connection with this Subpoena.

2.      The business of Horgan.

3.      The reorganization plan.

# Exhibit B

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. SHLOMO S. HAGLER**

*Justice*

----------------------------------------------------------------X

CHANEL, INC.,

                                     Plaintiff,

                        - v -

EAIRINN ASKA, DEIRDRE HORGAN, HORGAN, INC.

                                     Defendant.

----------------------------------------------------------------X

| | |
|---|---|
| PART | 17 |
| INDEX NO. | 155775/2020 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102

were read on this motion to/for                    SANCTIONS                    .

Upon the foregoing documents, it is

ORDERED that plaintiff's motion is denied to the extent plaintiff seeks sanctions against

defendants as stated on the record today; and it is further

ORDERED that defendants shall provide responses to plaintiff's discovery demands as

stated on the record today.

The parties shall appear for a further status conference on June 1, 2023 at 11:00 a.m.

remotely via Microsoft Teams as stated on the record today.

|  |  |
|---|---|
| **2/1/2023** | |
| DATE | SHLOMO S. HAGLER, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

155775/2020  CHANEL, INC. vs. ASKA, EAIRINN
Motion No. 003

Page 1 of 1

NYSCEF DOC. NO. 104    23-10325-dsj    Doc 34    Filed 05/02/23    Entered 05/02/23 11:17:27    Main Document    RECEIVED NYSCEF: 02/27/2023

Pg 17 of 31

1

1   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK - PART 17
2   --------------------------------------------X
    CHANEL, INC.,
3
                            Plaintiff,
4
        - against -                          Index No.  155775/2020
5
6   EAIRINN ASKA, et al,
7                           Defendants.
    --------------------------------------------X
8                  VIRTUAL PROCEEDINGS
9                           Civil Supreme Courthouse
                            60 Centre Street
10                          New York, New York 10007
                            February 1, 2023
11
12  BEFORE:
                            HONORABLE SHLOMO S. HAGLER
13                          Justice of the Supreme Court
14
    APPEARANCES:
15
16  Attorneys for the Plaintiff
    BY: REBECCA RYAN, ESQ.
17  BY: AMANDA CIPRIANO, ESQ.
18
19  Attorney for Defendants
    BY: WILLIAM HUMMELL, ESQ.
20
21
22
23
                            CHARLENE FOUNTALIOTIS-SQUIRES
24                          SENIOR COURT REPORTER
25

VIRTUAL PROCEEDINGS

1      THE CLERK:  Appearances, please.

2      DEFENSE ATTORNEY: Sure.

3      Good morning, Rebecca Ryan, Lowenstein Sandler,

4   1251 Avenue of the Americas, New York, New York.  I have to

5   pull up the zip code.   I'm joined by my colleague Amanda

6   Cipriano.

7      MR. HUMMELL:  William Hummell, 747 Third Avenue,

8   New York, New York 10017.

9      THE CLERK: Counsel, thank you so much.

10     I'm going to ask Ms. Fountaliotis if she would be

11   so kind to place her e-mail address.

12     THE COURT:  Let's go on the record.

13     Okay, so this is Plaintiff's motion for sanctions.

14   Essentially you're really looking for discovery but you're

15   arguing that the failure to comply with various discovery

16   requests is tantamount to sanctions, so Plaintiff's Counsel.

17     MS. RYAN:  Your Honor, we're here because

18   throughout this litigation Defendants have deprioritized

19   this case and have ignored communications from Counsel.

20   Your Honor, required that Defendants produce documents as of

21   November 28th pursuant to our motion to compel and

22   Defendants did not do so.  Instead of coming to Plaintiff's

23   Counsel about that, they instead filed a letter with the

24   Court asking for a reconsideration of the pretrial

25   deadlines.   They never told us that they weren't going to

*Charlene Fountaliotis-Squires, Senior Court Reporter*

3

VIRTUAL PROCEEDINGS

1    produce documents and they did not make that clear in their

2    letter application to, your Honor.    After that we sent

3    numerous e-mails trying to determine a date by which we

4    would receive these Court ordered documents.    For background

5    these are documents that are pursuant to discovery requests

6    that were sent in December of 2020, so it's been two years

7    now and we still have not received all of the documents that

8    we have asked for.    Defendants have cited to their

9    Counsel's medical emergency, however, that is not sufficient

10    in this case because it is clear that Defendants have in the

11    intervening time between the medical emergency and when our

12    documents were due, had communications with other attorneys

13    in other cases and afforded other Counsel and like --

14    afforded other Counsel a courtesy that they did not afford

15    us and prioritized other cases before ours.    Their

16    opposition does not provide any reasonable excuse for their

17    conduct and we still don't know whether Defendants have

18    taken any steps to comply with this Court's order.    And so

19    it is clear that Plaintiff's have been harmed by Defendants

20    conduct in this matter.    There's no question as to whether

21    they have failed to comply with this Court's order and that

22    sanctions are therefore warranted under CPLR 3126.    The only

23    question is what sanction is appropriate.    And we submit

24    that striking their answer and counterclaims is appropriate

25    here.

23-10375-dsj   Doc 34   Filed 05/02/23   Entered 05/02/23 11:17:27   Main Document
NYSCEF DOC. NO. 104                    Pg 20 of 31                  RECEIVED NYSCEF: 02/27/2023

4

VIRTUAL PROCEEDINGS

1       THE COURT:  Opposition?

2       MR. HUMMELL:  Yes, I submitted a letter -- actually

3   an affirmation to, your Honor, explaining our position and

4   essentially what this boils down to is that they are trying

5   to take advantage of circumstances that happened and for

6   them to try to dredge up and recharacterize what happened in

7   the past is simply not fair and it is not accurate.    And

8   for them to contend that with regard to things that happened

9   in 2020 and things that happened in 2021, they should be

10  able to somehow exploit those now.    Those are things that

11  were long ago.  And, frankly, as of the September 28th

12  hearing the thing at issue was supplemental production

13  having to do with a discreet number of items and they were

14  ordered to do some things based on what, your Honor, read

15  into the record and we were ordered to do some things and in

16  their motion papers it is kind of telling that they

17  mentioned that we were ordered to do things.  They ignore

18  the fact that they were ordered to do things.    And they

19  also ignore the fact that -- your Honor, was clear during

20  the September 28th hearing that we should follow what was

21  read into the record and the reality here is we didn't get

22  the record from the Court Reporter until the second week of

23  November.    And I'm not blaming her.  I don't know why it

24  took until the second week of November to get it, but for

25  Counsel to say that we did nothing prior to me having this

*Charlene Fountaliotis-Squires, Senior Court Reporter*

NYSCEF DOC. NO. 104    23-10325-dsj   Doc 34   Filed 05/02/23   Entered 05/02/23 11:17:27   Main Document    RECEIVED NYSCEF: 02/27/2023
Pg 21 of 31

5

VIRTUAL PROCEEDINGS

1    medical emergency, it is just not fair because we didn't

2    have the actual terms of the order and I wasn't comfortable

3    frankly telling my client to do something without being able

4    to give clarity as to what it was they were supposed to do

5    and we didn't get that until as I said the second week of

6    November.  In the meantime on October 15th I had a stroke.

7    I was in the hospital for a week, almost a week.   I then

8    convalesced at home for two weeks trying to  recover and

9    frankly I'm not 100 percent as of today but I have made

10   significant progress and what this -- I have got remarks I

11   want to make but I don't want to really burden the Court

12   because what this boils down to is they are trying to  take

13   advantage of the fact that I had a stroke and they are

14   trying to, according to the reply brief, they are trying to

15   get the Court to strike the answer that was filed, which is

16   outrageous frankly under the circumstances because it is not

17   the totality of circumstances that should be taken into

18   account, it is what happened on September 29th and

19   subsequently that should be taken into account.  And as of

20   the hearing on September 29th there were a discreet number

21   of issues that were still open.  As I said, your Honor, read

22   into the record what we were supposed to do.  When we

23   finally got the record and I was able to address it, I took

24   action with it but I have had a temporary incapacity and I

25   apologize for that.  It wasn't my choice, I didn't have a

*Charlene Fountaliotis-Squires, Senior Court Reporter*

NYSCEF DOC. NO. 104    23-10325-dsj    Doc 34    Filed 05/02/23    Entered 05/02/23 11:17:27    Main Document    RECEIVED NYSCEF: 02/27/2023
Pg 22 of 31

6

VIRTUAL PROCEEDINGS

1    stroke because I was trying to  avoid moving in this case.

2    And there's a lot of specious allegations by Plaintiff's

3    Counsel in their papers which are not true.   They simply

4    aren't true and they are not fair, frankly.   And with

5    regard to what we have done, we requested a status

6    conference.   We were given a status conference.  We were

7    told that we would address it here.   I received an e-mail

8    from Counsel saying I'm sympathetic to your circumstances

9    but we must move forward.   That's not showing any empathy.

10   That's not really professional for her to have done that.

11   And for her to expect me to accelerate this when the Court

12   already has scheduled the status conference to deal with

13   setting a new schedule based on the circumstances that

14   developed was really an unfair request for her to make.  And

15   for them to try to take advantage of circumstances against,

16   you know, my clients having to do with what happened is

17   really not fair and it is not really appropriate.   And we

18   have engaged a forensic expert.  The first person we

19   contacted to try to do that turned out -- I concluded that

20   he was not going to be able to do the job the way that it

21   needed to be done.   But we have a forensic expert and it is

22   a company called Corvus Forensics and they are located in

23   Brooklyn and it is a person who has a lot of experience and

24   seems to be very capable of doing it. Just so happens he is

25   on trial right now, so I don't have the ability to use him

NYSCEF DOC. NO. 104    23-10325-dsj    Doc 34    Filed 05/02/23    Entered 05/02/23 11:17:27    Main Document    RECEIVED NYSCEF: 02/27/2023

Pg 23 of 31

7

VIRTUAL PROCEEDINGS

1    right now because he is on trial in a matter that is in

2    Boston.   And he is not going to be available to me actually

3    until the end of next week.  That's not fault, that's not

4    his fault, that is just the reality of this.  But for

5    perspective, this is not an emergency.   They contend this

6    is an emergency, it is not really an emergency.   And with

7    regard to their claim and their reply that I should have

8    provided details and proof having to do with my medical

9    condition, I don't know how to respond to that, except it

10    seems that's unfair for her to demand that.  And the fact is

11    that during the September 29th hearing when I mentioned that

12    I needed a couple of extra weeks because I needed to visit

13    my sister who had cancer in Arizona, the Court was

14    sympathetic and said do you really want to put that on the

15    record, so under the circumstances am I really required to

16    go to the hospital and get the medical record?

17          THE COURT:  Mr. Hummell, I take your word for it

18    and you need not provide the back up information.

19          Let's move forward.   Ms. Ryan, do you want to

20    reply and then we can get to getting this discovery back on

21    track?

22          MS. RYAN:  Sure, I have a few comments and

23    responses.   First the status conference, this status

24    conference was scheduled before the letter sent by Mr.

25    Hummell.  And, two, looking back at what happened in 2002 --

*Charlene Fountalietis-Squires, Senior Court Reporter*

VIRTUAL PROCEEDINGS

1    excuse me, in 2020 and 2021 is important because it shows a

2    pattern and practice.  If this was the first time that

3    something like this had occurred or that there was a blown

4    deadline, of course, we would not be in this situation.  I

5    would say -- we had e-mailed Counsel numerous times before

6    filing this application just to get an update, just to get

7    an understanding of when we would receive these documents

8    and I don't think it is -- you know, we tried to avoid this

9    but we were ignored.   And I have a client to represent.

10   This case was filed in 2020 and it's been -- we're going on

11   the third year of it and I still don't have all the

12   documents.

13        THE COURT:  Exactly, there's no need for sanctions.

14   Given that Defendants Counsel suffered a stroke on

15   October 15th and he did not receive the transcript until

16   later in November, he has a valid excuse.   Counsel is

17   obligated to make a good faith effort in order to get

18   discovery done.   I understand the past history but in this

19   particular instance Counsel has a good excuse.

20        Let's move forward in a constructive manner, rather

21   than dredging up past history or ancient history.  It is

22   fair to say that this Court finds it important that we move

23   this case along.   It is three years old.   And this Court

24   did issue a decision in September of 2022, I want it obeyed

25   and we must move forward in a reasonable and more quicker

*Charlene Fountaliotis-Squires, Senior Court Reporter*

NYSCEF DOC. NO. 104    23-10325-dsj    Doc 34    Filed 05/02/23    Entered 05/02/23 11:17:27    Main Document    RECEIVED NYSCEF: 02/27/2023

Pg 25 of 31

9

VIRTUAL PROCEEDINGS

1    pace.

2          So, Mr. Hummell, what discovery -- strike that.

3          Let me focus with the Plaintiff's Counsel, what

4    discovery do you need that is outstanding?

5          Plaintiff's Counsel, Ms. Ryan.

6          MS. RYAN:  Yes, so what we're awaiting on is

7    everything that was so-ordered by, your Honor, in that

8    September 29th e-mail.   And then after that we have

9    depositions to do as well.

10          THE COURT:  Okay, Mr. Hummell, when can you

11    respond?

12          MR. HUMMELL:  I need to ask the Court for five

13    weeks to be able to turn that over because I need the

14    gentleman who is in Boston to help me with that.

15          THE COURT:  I'm going to grant it. So five weeks

16    today is February 1st, so that would mean March 8th; is that

17    correct?

18          MR. HUMMELL:  I don't -- I can't look at my

19    calendar because it is not available.

20          THE COURT:  Yes, so --

21          MR. HUMMELL:  I'm sure that's right.

22          THE COURT:  That's correct, because I believe it is

23    correct, so March 1st you will respond.

24          MR. HUMMELL: You said March 8th.

25          THE COURT:  I apologize, I don't know why I said

*Charlene Fountaliotis-Squires, Senior Court Reporter*

10

VIRTUAL PROCEEDINGS

1    March 1st, I meant March 8th.   March 8th you will respond.

2    And then we will schedule depositions, so Plaintiff's I,

3    guess, Mr. Hummell, do you want to take a deposition of the

4    Plaintiff?

5         MR. HUMMELL: Yes.

6         THE COURT:  When do you want to -- Ms. Ryan, when

7    is your client available?

8         MS. RYAN:  We will make our client available.   I

9    think that 45 days within -- after we get those documents is

10   sufficient to complete depositions.   However, I would ask,

11   your Honor, that given the history here, that there be a

12   conditional order entered that if we do not receive the

13   documents by March 8th, that Plaintiff's at least, you know,

14   we can recoup some fees for the work that we've had to do

15   throughout discovery to try and secure compliance.

16        THE COURT:  Denied.   He has a good excuse.

17   Better than I have heard in the last several months.   That

18   is denied.   If there's a failure to comply, you may move

19   for appropriate relief thereafter.

20        MS. RYAN:  Thank you, your Honor.

21        THE COURT:  So are you saying that you want the

22   deposition to occur on or before April 28th of your client,

23   Ms. Ryan?

24        MS. RYAN:  Yes, all depositions.

25        THE COURT:  All depositions.   Okay, fair enough.

*Charlene Fountaliotis-Squires, Senior Court Reporter*

23-10325-dsj   Doc 34   Filed 05/02/23   Entered 05/02/23 11:17:27   Main Document
NYSCEF DOC. NO. 104                          Pg 27 of 31                    RECEIVED NYSCEF: 02/27/2023

11
VIRTUAL PROCEEDINGS

1           Mr. Hummell, can your client also appear on or

2      before the 28th of April?

3           MR. HUMMELL:  I'm confident that they can. But

4      there's one other person that I'm going to need help with

5      because the person who is the immediate supervisor of

6      Eairinn Aska, who as I understand may not be true I have

7      heard it secondhand, is no longer with the company and I'm

8      going to want to be able to depose him and so I  may have to

9      subpoena him so I need a current address and I could provide

10     a letter to them identifying the gentleman's name.  I don't

11     remember it off top of my head now and ask them to give me

12     an address for him so that I can subpoena him or help make

13     him available.

14          THE COURT:  Okay.

15          So, Ms. Ryan, obviously you don't know the name so

16     you can't respond, so, Mr. Hummell, you need to identify the

17     individual and you must seek it formally and then I guess

18     Plaintiff's Counsel will act accordingly and if he is still

19     -- it is a male you said?

20          MR. HUMMELL: It is a man, yes.

21          THE COURT:  So if he is still employed with the

22     Plaintiff, then obviously that may be one response.  If he

23     is not currently employed, you must give the last known

24     address.

25          MR. HUMMELL: I just remembered it is a French

*Charlene Fountaliotis-Squires, Senior Court Reporter*

VIRTUAL PROCEEDINGS

1    sounding name, that's all I remember right now.

2            THE COURT:  Okay, so let's do this, so you can

3    depose that nonparty if he is a nonparty, I'm not sure yet,

4    by the end of May.

5            MR. HUMMELL: Okay.

6            THE COURT:  And please make that request as soon as

7    possible so that you can do your due diligence because May

8    -- end of May may come and go and you may not have the

9    information, you may have to hire a private investigator,

10   you may  have to do some due diligence in order to obtain

11   the information.

12           MR. HUMMELL: I will deliver a letter to them by

13   Friday.

14           THE COURT:  Okay.

15           Mr. Hummell, anything else you wanted to add, that

16   was the last piece?

17           MS. RYAN:  I would ask that it be the end of April.

18   I was -- my request for 45 days would be parties and

19   nonparty depositions.

20           THE COURT:  I will give a little more time because

21   if it's a nonparty and he has to issue a subpoena and hire

22   an investigator, I think the end of May makes more sense.

23   It is just not going to happen.   And he will be lucky even

24   if at the end of May to get a nonparty who is not working

25   and if he doesn't have the information.   So I want to make

*Charlene Fountaliotis-Squires, Senior Court Reporter*

1    it fair and reasonable and to do so within 45 days may not

2    be possible under the circumstances.

3          Ms. Ryan, is there any other discovery that you

4    need?

5          MS. RYAN:  We -- the prior orders have had expert

6    discovery as well so I would ask for additional time for

7    potential expert discovery after the completion of

8    depositions, although I think that could go -- that time

9    line could run hand in hand or alongside the nonparty

10    deposition time line.

11          THE COURT:  You want to do that by the end of May

12    as well?

13          MS. RYAN:  Yes, I think that's reasonable.

14          THE COURT:  Mr. Hummell?

15          MR. HUMMELL: I think it should be later than that.

16          THE COURT:  What is your --

17          MR. HUMMELL: I think it should be by the middle of

18    June.

19          THE COURT:  It is another two weeks, I will permit

20    that.  Just because I don't want to rush it, so by

21    June 16th.

22          MR. HUMMELL: I don't have a calendar, but --

23          THE COURT:  I do, that's the middle of June.

24          MR. HUMMELL: I have a tendency to pick weekend days

25    so --

NYSCEF DOC. NO. 104    23-10325-dsj   Doc 34   Filed 05/02/23   Entered 05/02/23 11:17:27   Main Document    RECEIVED NYSCEF: 02/27/2023
Pg 30 of 31

14

VIRTUAL PROCEEDINGS

1          THE COURT:  By the end of June -- by the middle of

2     June would be June 16th.

3          MR. HUMMELL: Okay.

4          THE COURT:  There are 30 days in June so it makes

5     it simple.

6          MR. HUMMELL: Okay, thank you.

7          THE COURT:  Post EBT demands 30 days and then

8     30 days thereafter to respond.  Let's wrap up all discovery

9     by the end of July or end of August.

10          When do you want to do the note of issue, Ms. Ryan,

11     because you have to file?

12          MS. RYAN:  Your Honor, sooner the better, so --

13          THE COURT:  By the end of July.   July 31st, that's

14     the -- 31 days in July, that's a Monday. Okay, so by

15     July 31st.  Here I think I will schedule another conference

16     because you seem not to work together and without this

17     Court's intervention I don't believe we're going to have

18     discovery complete.

19          So, Mr. Mackenzie, let's try to get another date

20     some time in early June to make sure that this is proceeding

21     expeditiously or end of May, either one.

22          THE CLERK: The Court offers June 1st at 11:00 a.m.

23          THE COURT: Okay, is that a good day for everyone?

24          MR. HUMMELL: I'm sure that it is.

25          THE COURT:  Who wants to draft the status

*Charlene Fountaliotis-Squires, Senior Court Reporter*

15

VIRTUAL PROCEEDINGS

1    conference order?  I would like a volunteer.

2              MS. RYAN:  We're happy to do so, your Honor.

3              THE COURT:  Thank you, Counsel.

4              So obviously you must collaborate with your

5    colleague and once you have reached an agreement on the

6    status conference order, please e-mail it to Mr. Mackenzie.

7    Can you do so by Monday the 6th, is that enough time?

8              MR. HUMMELL:  Can we do Tuesday?

9              THE COURT:  Tuesday the 7th is fine.

10             Please order the record.  Have a good day,

11   everyone.

12             MR. HUMMELL: Thank you very much, your Honor.

13             THE COURT:  Be well.

14             MS. RYAN: Thank you.

15             ************************************

16

17             This is certified a true and accurate transcript of

18   my stenographic notes taken in the above captioned matter.

19

20                         *Charlene Fountaliotis-Squires*

21                         ----------------------------

22                         CHARLENE FOUNTALIOTIS-SQUIRES

23                         SENIOR COURT REPORTER

24

25