**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
Michael A. Kaplan, Esq.
Rebecca J. Ryan, Esq.
Lindsay H. Sklar, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402
Email: jcohen@lowenstein.com
Email: mkaplan@lowenstein.com
Email: rryan@lowenstein.com
Email: lsklar@lowenstein.com

*Counsel to Chanel, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | Chapter 11 |
| HORGAN INC., | Case No. 23-10325-DSJ |
| Debtor. | |
| CHANEL, INC., | |
| Plaintiff, | Adv. No. 23-_____ |
| v. | |
| HORGAN INC., | **COMPLAINT FOR A DETERMINATION EXCEPTING DEBT FROM DISCHARGE AND OBJECTING TO DISCHARGE** |
| Defendant. | |

Chanel, Inc. ("Chanel" or "Plaintiff"), by and through its undersigned counsel, by way of this adversary complaint (the "Complaint") against Debtor Horgan Inc. ("Horgan" or "Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1.      As described in more detail below, this adversary proceeding  was commenced pursuant to  sections 523(c)(1) and 523(a)(2) and (6) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 4007 and 7001(6), to (a) obtain a determination excepting a debt that Defendant owes to Chanel from discharge pursuant to section 523(c)(1) of the Bankruptcy Code; and (b) object to the discharge of certain of Chanel's claims against Defendant pursuant to section 523(a)(2) and (6) of the Bankruptcy Code and Bankruptcy Rule 7001(4).[1]

2.      This litigation arises from Defendant's theft from Chanel.  Defendant is a company wholly owned and operated by Deirdre Aska ("Deirdre"), the mother of Eairinn Aska ("Eairinn"), a former employee of Chanel.  Most recently, Eairinn held roles at Chanel as Associate Director, and later, Group Director of Visual Merchandising.

3.      In connection with her employment with Chanel, Eairinn, and the employees she supervised, were entrusted with various duties which required that they incur *bona fide* business expenses from time to time.  Eairinn had a travel and expenses ("T&E") account that she could use for reimbursement of business expenses and had authority to approve vendor invoices issued to Chanel.  The employees Eairinn supervised were entrusted with company cards for work-related purchases (the "P-Card"), and Eairinn had the power to approve charges incurred by use of those cards.

---

[1]    On June 5, 2023, Horgan filed a motion to convert its Chapter 11 case to a Chapter 7 case.  [ECF No. 55.]  In the event the Court grants Horgan's motion, Chanel reserves all rights and remedies to amend this Complaint to add counts arising under Chapter 7.

4.      Eairinn took advantage of the trust Chanel placed in her, using Chanel as her own personal bank account, thereby defrauding Chanel out of hundreds of thousands of dollars throughout the duration of her employment.

5.      Defendant primarily defrauded Chanel by posing as a vendor and submitting fraudulent invoices for unnecessary work or work that was never performed.  Eairinn did not disclose to Chanel that Horgan was her mother's company.

6.      Defendant's bankruptcy case represents the final strategic maneuver in its scheme to defraud Chanel, who, by this Complaint, seeks to prevent Defendant from abusing the bankruptcy process to abscond with value to which it is not entitled.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8.      This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1409(a).  This adversary proceeding is related to a Chapter 11 bankruptcy case that is pending in this district.  (*See In re Horgan, Inc.*, Case No. 23-10325-DSJ (the "Bankruptcy Case").)

9.      This adversary proceeding is commenced pursuant to section 523(c) of title 11 of the Bankruptcy Code and Bankruptcy Rules 4007, 7001(4) and 7001(6).

## PARTIES

10.     Plaintiff Chanel is the holder of an unsecured claim in Defendant's Bankruptcy Case.  Chanel is a New York corporation with a principal business address at 9 West 57th Street, New York, NY 10019.

11.     Defendant Horgan, the debtor in the above-captioned Chapter 11 Bankruptcy Case, is a New York Corporation with a principal business address at 20 E. 67th Street, #7R, New York, NY 10065.

12.     Chanel filed suit (the "State Court Action") in the Supreme Court for New York, County of New York, captioned *Chanel, Inc. v. Aska*, Index No. 155775/2020 against Defendant, Eairinn, and Deirdre on July 28, 2020.  The State Court Action has been stayed due to Defendant's (as well as Eairinn's and Deirdre's) filing of the Chapter 11 Bankruptcy Case.

13.     Defendant listed Chanel as an unsecured creditor on the Schedule E/F filed in its Chapter 11 case.  [ECF No. 18.]

14.     Chanel filed a proof of claim in the Bankruptcy Case, a true and correct copy of which is attached hereto as **Exhibit A**.

## FACTS

15.      Chanel hired Eairinn in 2005 as a Visual Merchandising Coordinator.  During her employment, she was promoted to Associate Director, Visual Merchandising, and subsequently to Group Director, Visual Merchandising.

16.     As Group Director, Eairinn had supervisory responsibility over numerous Chanel visual merchandising employees.  She also was responsible, as Associate Director and Group Director, for retaining freelancers and other independent contractors.  Visual Merchandising is responsible for developing floor plans and three-dimensional displays in order to maximize sales.

17.     Eairinn held the position of Group Director with Chanel until approximately June 2019, when she was suspended and ultimately terminated after Chanel's discovery of the fraud she had been actively concealing.

18.     As both Associate Director and Group Director for Visual Merchandising, Eairinn was entrusted with the ability to make and approve certain expenditures on behalf of Chanel.

These included expenses related to business travel and to various promotional and marketing events.

19.    Eairinn had access to the P-Cards of her direct reports, and she had the authority to approve charges of those P-Cards.  The P-Cards were intended to be used by her employees to charge *bona fide* business expenses.  Eairinn also had the ability to submit expense reports for reimbursement out of her T&E budget for legitimate business travel and other expenses incurred in performing her duties.

20.    Eairinn had the authority to approve invoices submitted to Chanel by legitimate business vendors.  Chanel often engages vendors to provide goods and services relating to promotional and marketing events and for other work related to visual merchandising.  Vendors typically invoice Chanel for *bona fide* goods and services, and Chanel remits payment.

21.    Eairinn hatched a scheme to fraudulently submit invoices (the "Fraudulent Invoices") to Chanel from Deirdre's company, Horgan, for services that purportedly were provided for the Chanel Visual Merchandising group.

22.    The Fraudulent Invoices charged for services that Horgan did not provide to Chanel.

23.    An investigation into the Horgan invoices revealed that no Visual Merchandising employees aside from Eairinn had any knowledge as to what Horgan was or as to any services provided to Chanel by Horgan.

24.    Eairinn created the Fraudulent Invoices on her work laptop, and submitted them for payment to Chanel on behalf of Horgan.  Eairinn pre-filled out and emailed to Deirdre the documentation to set up Horgan as a vendor in Chanel's payment systems, including an ACH transfer form providing for Horgan to accept bank transfers from Chanel.

25.    Eairinn requested Deirdre's signature on the documentation, and Deirdre provided the signature, paving the way for bank transfers to be made from Chanel to Horgan on the Fraudulent Invoices.

26.    Eairinn's inside knowledge of Chanel's process for retaining vendors and processing payments to vendors, along with her detailed knowledge of Chanel's actual promotional and/or marketing events, allowed Defendant, Eairinn, and Deirdre to submit and receive payment for the Fraudulent Invoices totaling more than $300,000.

27.    Horgan received the payments Chanel made on the Fraudulent Invoices and, upon information and belief, the money from those payments was remitted at least in part to both Eairinn and Deirdre.

28.    Upon being confronted about the Fraudulent Invoices in June 2019, shortly after Chanel's discovery of the scheme, Eairinn admitted that she prepared and submitted fake Horgan invoices reflecting services not provided to Chanel.

29.    Contrary to her duties as an employee of Chanel, Eairinn actively concealed the fraud she and Defendant engaged in to allow the scheme to continue undetected.

30.    Defendant's fraudulent scheme—both how it operated and the extent of Chanel's losses—remains under investigation by Chanel.

31.    Chanel filed the State Court Action against Defendant, Eairinn, and Deirdre on July 28, 2020 alleging one count of common law fraud against Defendant, Eairinn, and Deirdre; one count of conversion against Defendant, Eairinn, and Deirdre; one count of unjust enrichment against Defendant, Eairinn, and Deirdre; and one count of faithless servant doctrine against Eairinn.

32.    On December 9, 2020, Chanel served its First Requests for Production of Documents ("Requests") on Defendant, Eairinn, and Deirdre.  After attempting for a year-and-a-half to resolve discovery disputes through meet-and-confers, Chanel moved to compel Defendant, Eairinn, and Deirdre to comply with their discovery obligations and produce responsive documents and information in accordance with Chanel's Requests, including electronically stored information (such as text messages and emails between and among Defendant, Eairinn, and Deirdre). Following briefing and oral argument, the Court ordered Defendant, Eairinn, and Deirdre to produce, by November 28, 2022: (a) all documents, invoices, and records of payments relating to any financial transactions relating to (1) Chanel and Eairinn, (2) Chanel and Deirdre, and (3) Chanel and Horgan, from 2013 to July 28, 2020; (b) Defendant, Eairinn, and Deirdre's communications, including emails and text messages, related to, *inter alia*, Chanel, payments received by Chanel, the work (if any) that Horgan performed for Chanel and pursuant to which Horgan invoiced Chanel, and payments between or among Defendant, Eairinn, and Deirdre; and (c) a general description of the work Horgan provides to its clients and whether Horgan has other clients aside from Chanel.  Defendant, Eairinn, and Deirdre defaulted on their obligation to produce these documents.  Following a compliance conference on February 1, 2023, Defendant, Eairinn, and Deirdre were ordered to complete their production of documents on or before March 8, 2023.

33.    The day before this production was due, on March 7, 2023 ("Petition Date"), Defendant, Eairinn, and Deirdre each filed a voluntary petition (collectively, the "Petitions") for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Cases"). Defendant, Eairinn, and Deirdre are represented by the same law firm in connection with both the State Court Action and the Bankruptcy Cases.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Exception to Discharge under 11 U.S.C. § 523(a)(2)(A)

34.     Chanel repeats and realleges the allegations set forth in paragraphs 1 through 33 as if set forth in their entirety.

35.     Chanel is a creditor of Defendant by reason of certain debts incurred as a result of Defendant's fraudulent conduct.

36.     Under section 523(a)(2) of the Bankruptcy Code, Defendant's debt to Chanel is not entitled to discharge on the ground that it obtained property from Chanel by false pretenses, a false representation, or actual fraud, other than a statement respecting Defendant's or an insider's financial condition.

37.     As more fully set forth above, Defendant made numerous false representations to Chanel, including, *inter alia*, that the Fraudulent Invoices were for *bona fide* and necessary work performed for Chanel.

38.     Eairinn caused the false Fraudulent Invoices to be presented to Chanel under false pretenses by preparing and submitting the Fraudulent Invoices through Horgan.

39.     Defendant knew the Fraudulent Invoices contained material misstatements of fact.

40.     Defendant intended for Chanel to rely upon the Fraudulent Invoices and other misstatements of fact in order to induce Chanel to pay Defendant money for goods or services that Defendant did not provide.

41.     At the time the Fraudulent Invoices and other misstatements were presented to Chanel, Chanel was unaware that the misstatements of fact were untrue and reasonably relied upon them to its detriment, including by paying hundreds of thousands of dollars to Defendant for goods or services unrelated to legitimate business purposes.

42.     Defendant actively concealed its fraudulent activity, by way of making fraudulent representations, from Chanel.

43.     Defendant engaged in actual fraud against Chanel by operating a scheme whereby it fraudulently obtained funds belonging to Chanel through the submission of the Fraudulent Invoices.

44.     Defendant, Eairinn, and Deirdre filed their Petitions to avoid payment of the debts incurred by way of their fraudulent scheme.  On the Petition Date, the total debt owed to Chanel was at least $318,257.80 ("Total Debt").  The Total Debt does not include interest or other charges.

45.     The Court should find that the debts for goods and services acquired by Defendant by false pretenses, false representations, or actual fraud are not dischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

**SECOND CAUSE OF ACTION**
**Exception to Discharge under 11 U.S.C. § 523(a)(6)**

46.     Chanel repeats and realleges the allegations set forth in paragraphs 1 through 45 as if set forth in their entirety.

47.     Defendant, Eairinn, and Deirdre acted willfully and maliciously in developing and carrying out their scheme to defraud Chanel by way of the Fraudulent Invoices.

48.     As a proximate result of Defendant, Eairinn, and Deirdre's willful and malicious actions, Chanel sustained substantial loss and damages.

49.     The Court should find that the debt Defendant owes Chanel is not dischargeable under section 523(a)(6) of the Bankruptcy Code.

Dated: June 12, 2023
New York, New York

**LOWENSTEIN SANDLER LLP**

/s/   *Michael A. Kaplan*
Jeffrey L. Cohen, Esq.
Michael A. Kaplan, Esq.
Rebecca J. Ryan, Esq.
Lindsay H. Sklar, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402
Email: jcohen@lowenstein.com
Email: mkaplan@lowenstein.com
Email: rryan@lowenstein.com
Email: lsklar@lowenstein.com

*Counsel to Chanel, Inc.*

# EXHIBIT A

| Fill in this information to identify your case: |
|---|
| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK |
| Debtor: HORGAN INC. |
| Case No. 23-10325 (DSJ) |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Chanel, Inc.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No

☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP 2002(g))

Where should notices to the creditor be sent?

Attn: _Michael A. Kaplan, Esq._

Lowenstein Sandler LLP
1251 Avenue of the Americas, 17th Floor

Number   Street

New York, NY 10020

City       State       Zip Code

Contact phone   (212) 262-6700

Contact email   mkaplan@lowenstein.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

Where should payments to the creditor be sent? (if different)

Name

Number   Street

City       State       Zip Code

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410

**Proof of Claim**

| | | | |
|---|---|---|---|
| **6.** | **Do you have any number you use to identify the debtor?** | ☒ No | |
| | | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: | |

| | | | |
|---|---|---|---|
| **7.** | **How much is the claim?** | $ _318,257.80_ | **Does this amount include interest or other charges?** |
| | | | ☒ No |
| | | | ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached complaint and supporting documents.

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature or property:**

☐ Real estate: If the claim is secured by the debtor's principle residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other: Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amount should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition:** $_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☒ No

☐ Yes. *Check one:*

**A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.**

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. [11 U.S.C. § 503(b)(9) – see below]   $_____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| Part 3: | Sign below |
|---------|------------|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is:

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information Is true and correct.

I declare under penalty of perjury that the foregoing Is true and correct.

Executed on date   04/06/2023
MM / DD / YYYY

*/s/ Michael A. Kaplan*

Signature

**Print the name of the person who is completing and signing this claim:**

Name    Michael A. Kaplan, Esq.

Title    Partner

Company    Lowenstein Sandler LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    1251 Avenue of the Americas, 17th Floor, New York, NY 10020
Number, Street, City, State and Zip Code

Contact phone    (212) 262-6700        Email   mkaplan@lowenstein.com

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:42 AM          INDEX NO. 155775/2020
NYSCEF DOC. NO. 1          23-10325-dsj    Doc 56    Filed 06/12/23    Entered 06/12/23 17:59:08    Main Document          RECEIVED NYSCEF: 07/28/2020

Pg 15 of 29

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| CHANEL, INC., | Index No. |
| Plaintiff, | |
| v. | **SUMMONS** |
| EAIRINN ASKA, DEIRDRE HORGAN, and HORGAN, INC., | Plaintiff designates New York County as the place of trial. |
| Defendants. | |

**TO THE ABOVE NAMED DEFENDANTS.**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The venue is proper in New York County pursuant to CPLR § 503(a) and (d).

Dated: July 28, 2020
      New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

By: _/s/ Christopher Porrino_
Christopher Porrino, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel. (212) 262-6700
cporrino@lowenstein.com

_Attorneys for Plaintiff Chanel, Inc._

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:42 AM
INDEX NO. 155775/2020
NYSCEF DOC. NO. 1
23-10325-dsj   Doc 56   Filed 06/12/23   Entered 06/12/23 17:59:08   Main Document
RECEIVED NYSCEF: 07/28/2020
Pg 16 of 29

TO:

Eairinn Aska
172 East 91st Street, Apt. 3A,
New York, NY 10128

Deirdre Horgan
20 E. 67th Street, #7R,
New York, NY 10021

Horgan, Inc.
20 E. 67th Street, #7R,
New York, NY 10021

23-10325-dsj    Doc 56    Filed 06/12/23    Entered 06/12/23 17:59:08    Main Document
Pg 17 of 29

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| CHANEL, INC., | Index No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| EAIRINN ASKA, DEIRDRE HORGAN, and HORGAN, INC., | |
| Defendants. | |

Plaintiff Chanel, Inc. (hereinafter "**Chanel**" or the "**Company**"), acting by and through its attorneys, Lowenstein Sandler LLP, by way of Complaint against Eairinn Aska ("**Aska**"), Deirdre Horgan ("**Deirdre**"), and Horgan, Inc. ("**Horgan**"), (collectively, the "**Defendants**"), alleges as follows:

## NATURE OF THE ACTION

1.    This litigation arises from Defendants' theft from Aska's former employer, Chanel.  Most recently, Aska held roles as Associate Director, and later, Group Director of Visual Merchandising.

2.    In connection with her employment with Chanel, Aska, and the employees she supervised, were entrusted with various duties which required that they incur *bona fide* business expenses from time to time.  Aska had a travel and expenses ("**T&E**") account she could use for reimbursement of business expenses and had the ability to approve vendor invoices issued to Chanel. The employees Aska supervised were entrusted with company cards to use for purchases (the "**P-Card**"), and Aska had the power to approve charges to those cards.

23-10325-dsj    Doc 56    Filed 06/12/23    Entered 06/12/23 17:59:08    Main Document
Pg 18 of 29

3.      Aska abused the trust placed in her by Chanel by using Chanel as her own personal bank account, thus defrauding Chanel out of hundreds of thousands of dollars throughout the duration of her employment.

4.      Defendants primarily defrauded Chanel through the submission of fraudulent invoices by Horgan, an entity incorporated and controlled by Deirdre.  Horgan posed as a vendor, submitting invoices for unnecessary work or work that was never performed.  Aska did not disclose to Chanel that Horgan was her mother's company.

5.      Aska padded her income by stealing from Chanel in other ways.  For instance, Aska conspired with a third party to cause Chanel to unnecessarily purchase certain furniture at an inflated price.  She used the P-Cards of employees she supervised, and her T&E account, for personal charges, and she misappropriated certain equipment and fixtures belonging to Chanel by having the items shipped directly to herself.

6.      Through this action, Chanel seeks to be made whole for its losses stemming from Defendants' fraudulent actions.

## PARTIES

7.      Plaintiff Chanel is a New York corporation with a principal business address at 9 West 57th Street, New York, NY 10019.

8.      Defendant Aska is an individual residing at 172 East 91st Street, Apt. 3A, New York, NY 10128.

9.      Defendant Deirdre is an individual residing at 20 E. 67th Street, #7R, New York, NY 10021.  Deirdre is the principal and CEO of Defendant Horgan and the mother of Defendant Aska.

10.     Defendant Horgan is a New York Corporation with a principal business address at 20 E. 67th Street, #7R, New York, NY 10021.

- 2 -

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this proceeding pursuant to CPLR §§ 301 and 302 because all of the parties either reside or transact substantial business in New York, New York, and the majority of the relevant events took place in New York, New York.

12.     Venue is proper in this Court pursuant to CPRL § 503(a) and (c) because Chanel is a domestic corporation with its principal office located in New York City.  Venue is also proper because many of the wrongful acts alleged herein either occurred in New York County, New York or caused injury in New York County, New York.

## FACTS COMMON TO ALL COUNTS

13.     Aska was hired by Chanel in 2005 as a Visual Merchandising Coordinator. During her employment, she was promoted to Associate Director, Visual Merchandising, and subsequently to Group Director, Visual Merchandising.

14.     As Group Director, Aska had supervisory responsibility over numerous Chanel visual merchandising employees.  She also was responsible, as Associate Director and Group Director, for retaining freelancers and other independent contractors.  Visual Merchandising is responsible for developing floor plans and three-dimensional displays in order to maximize sales.

15.     Aska held the position of Group Director with Chanel until approximately June of 2019, when she was suspended and ultimately terminated as a result of Chanel's discovery of the fraud she had been actively concealing.

16.     As both Associate Director and Group Director for Visual Merchandising, Aska was entrusted with the ability to make and approve certain expenditures on behalf of Chanel. These included expenses related to business travel and to various promotional and marketing events.

- 3 -

17.     Aska had access to the P-Cards of her direct reports, and she had the authority to approve charges of those P-Cards.  The P-Cards were intended to be used by her employees to charge *bona fide* business expenses.  Aska also had the ability to submit expense reports for reimbursement out of her T&E budget for legitimate business travel and other expenses incurred in performing her duties.

18.     Aska had the authority to approve invoices submitted to Chanel by legitimate business vendors.  Chanel often engages vendors to provide goods and services relating to promotional and marketing events and for other work related to visual merchandising.  Vendors typically invoice Chanel for *bona fide* goods and services, and Chanel remits payment.

19.     Aska hatched a scheme to fraudulently submit invoices (the "**Fraudulent Invoices**") to Chanel from Deirdre's company, Horgan, for services that purportedly were provided for the Chanel Visual Merchandising group.

20.     The Fraudulent Invoices charged for services that were not provided to Chanel.

21.     An investigation into the Horgan invoices revealed that no Visual Merchandising employees aside from Aska had any knowledge as to what Horgan was or as to any services provided to Chanel by Horgan.

22.     Aska created the Fraudulent Invoices on her work laptop, and submitted them for payment to Chanel.  Aska pre-filled out the documentation to set up Horgan as a vendor in Chanel's payment systems and emailed the documentation, including an ACH transfer form providing for Horgan to accept bank transfers from Chanel, to her mother Deirdre.

23.     Aska requested Deirdre's signature on the documentation, and Deirdre provided the signature, paving the way for bank transfers to be made from Chanel to Horgan on the Fraudulent Invoices.

- 4 -

24.     Aska's inside knowledge of Chanel's process for retaining vendors and processing payments to vendors, along with her detailed knowledge of Chanel's actual promotional and/or marketing events, allowed Defendants to submit and receive payment for the Fraudulent Invoices totaling more than $300,000.

25.     Horgan received the payments Chanel made on the Fraudulent Invoices and, upon information and belief, the money from those payments was remitted at least in part to both Aska and Deirdre.

26.     Upon being confronted about the Fraudulent Invoices in June 2019, shortly after Chanel's discovery of the scheme, Aska admitted that she prepared and submitted fake Horgan invoices reflecting services not provided to Chanel.

27.     In addition to invoicing Chanel for never-provided services through the Fraudulent Invoices, Aska defrauded and stole from Chanel through other means.

28.     In one such instance, Aska and an acquaintance ("**Acquaintance**"), hatched a plot to cause Chanel to pay more than $20,750 for certain furniture, notably a bar (the "**Bar**"), that was being given away for free.

29.     Text messages discovered on Aska's company-issued phone after her suspension show how Aska and Acquaintance used the Bar to defraud Chanel.

30.     On or around November 20, 2018, Acquaintance informed Aska that he became aware that the Bar was available, free of charge, to anyone who wished to pick it up and transport it.

31.     Acquaintance sent Aska a picture of the Bar, and Aska expressed interest in it.

32.     Although they both knew the Bar was being given away free of charge, Aska and Acquaintance began to discuss billing Chanel for the Bar.  Aska wrote to Acquaintance, "You want to send me an invoice? You should totally reinstate [sic] your company lol."

33.     After Acquaintance responded, "[w]e can split it," Aska wrote back describing all the things the money for the free Bar could pay for, writing "[h]oney it can pay for Logan's trip – cover the window glass charge – pay for lukes [sic] trip or whatever he had and give you extra pillow."

34.     In subsequent text messages, Aska explained to Acquaintance that he should set up a "Square" account through which to route payment in order to avoid any red flags popping up in Chanel's payment system.

35.     Aska and Acquaintance set up such an account with a fake business name, Custom Carpentry Designs, with a non-existent business address.  Aska thereafter used another Chanel employee's P-Card to pay $20,750 for the free Bar.

36.     In their text message exchange, Acquaintance speculated that the Bar, which was given away for free, was worth approximately $4,000.

37.     Acquaintance has subsequently settled Chanel's claims against him.

38.     In yet another instance where Aska abused her position, Aska had a vendor deliver to her certain bookcases and glass shelving (the "**Bookcase Items**"), which were the property of Chanel.  Aska continues to wrongfully retain the Bookcase Items.

39.     Aska also routinely abused her employees' P-Cards and her T&E budget to purchase personal items with no *bona fide* business purpose.

- 6 -

23-10325-dsj   Doc 56   Filed 06/12/23   Entered 06/12/23 17:59:08   Main Document
Pg 23 of 29

40.    As an example, while on a trip to Miami in December 2018, Aska used the P-Card of an employee she supervised to purchase thousands of dollars of gift cards, Uber rides, and personal items at a Florida CVS. Aska, as Group Director, approved the purchases.

41.    In another instance, while on a business trip, Aska charged $280 to her room at the St. Regis Bal Harbour purportedly for a business meal with an individual who was not in Florida at the time. As it turns out, the $280 charge was made for the purchase of clothing at a sundry shop in the hotel's lobby, and was not for a business meal as Aska had represented.

42.    As an employee of Chanel, Aska had a duty of honesty and loyalty.

43.    Contrary to her duties as an employee of Chanel, Aska actively concealed the fraud she and Defendants engaged in in order to allow the scheme to continue undetected.

44.    Defendants' fraudulent scheme – both how it operated and the extent of Chanel's losses – remains under investigation by Chanel.

## COUNT I
### (Common Law Fraud – All Defendants)

45.    Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

46.    As more fully set forth above, Defendants made numerous misrepresentations to Chanel, including, *inter alia*, that the Fraudulent Invoices were for *bona fide* and necessary work performed for Chanel.

47.    Aska caused the false Fraudulent Invoices to be presented to Chanel by preparing and submitting the Fraudulent Invoices through Horgan.

48.    Defendants knew the Fraudulent Invoices contained material misstatements of fact.

- 7 -

23-10325-dsj    Doc 56    Filed 06/12/23    Entered 06/12/23 17:59:08    Main Document
Pg 24 of 29

49.    As described above, Aska made other material misrepresentations to Chanel in order to induce it to make payments for goods and services unrelated to any legitimate business purpose. Aska also made numerous misstatements relating to the propriety of P-Card purchases and T&E expenses.

50.    Defendants intended for Chanel to rely upon the Fraudulent Invoices and other misstatements of fact in order to induce Chanel to pay Horgan money for goods or services it did not provide, and to induce Chanel to pay for Aska's personal charges or reimburse Aska for charges unrelated to legitimate business expenses.

51.    At the time the Fraudulent Invoices and other misstatements were presented to Chanel, Chanel was unaware that the misstatements of fact were untrue and reasonably relied upon them to its detriment, including by paying hundreds of thousands of dollars to Horgan and Aska for goods or services unrelated to legitimate business purposes.

52.    Defendants actively concealed their fraudulent activity from Chanel.

53.    As a direct and proximate result of Defendants' misrepresentations and omissions, Chanel has suffered and continues to suffer injury for which Defendants should be held liable in damages.

## COUNT II
### (Conversion – All Defendants)

54.    Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

55.    As more fully set forth above, Defendants operated a scheme whereby they fraudulently obtained funds belonging to Chanel through the submission of the Fraudulent Invoices.

- 8 -

23-10325-dsj   Doc 56   Filed 06/12/23   Entered 06/12/23 17:59:08   Main Document
Pg 25 of 29

56.     Also as set forth above, Aska fraudulently obtained property belonging to Chanel, including, among other things, improper payments and the Bookcase Items.

57.     As a direct and proximate result of Defendants' conduct, Chanel has been deprived of the use of its property and has suffered and continues to suffer injury for which Defendants should be held liable in damages.

## COUNT III
### (Unjust Enrichment – All Defendants)

58.     Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

59.     As described in detail above, Defendants have been unjustly enriched by receiving payment from Chanel for goods and services not provided to Chanel.

60.     Aska has further been unjustly enriched by, among other things, receiving payment and/or reimbursement for charges unrelated to any legitimate business purpose and by receiving and retaining the Bookcase Items.

61.     Under the principles of equity and good conscience, Defendants should be required to pay back to Chanel the amount of the unjust enrichment.

## COUNT IV
### (Faithless Servant Doctrine – Against Aska)

62.     Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

63.     As an employee, Aska was obligated to be loyal to Chanel, to refrain from acting inconsistently with Chanel's best interests, and to exercise the utmost good faith and loyalty in the exercise of her duties.

64.     As set forth in detail above, by defrauding Chanel and by misusing corporate property for her own personal benefit, Aska breached her duty of loyalty to Chanel.

- 9 -

65.     As a result, Aska owes damages in an amount to be determined at trial, as well as disgorgement of all compensation received from Chanel during her period of disloyalty.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief against Defendants as follows:

A.     Compensatory, incidental, and punitive damages, as appropriate, against Defendants, for the damages sustained because of the wrongdoing of Defendants, together with interest thereon;

B.     Judgment in favor of Plaintiff on all Counts of the Complaint with prejudice and such further relief as the Court deems just and appropriate;

C.     Pre- and post-judgment interest;

D.     Reasonable attorneys' fees and costs of suit;

E.     Such other and further relief as appears reasonable and just.

Dated:  July 28, 2020
      New York, New York

**LOWENSTEIN SANDLER L L P**

By: */s/ Christopher Porrino*
Christopher Porrino, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 262-6700
cporrino@lowenstein.com

*Attorneys for Plaintiff Chanel, Inc.*

- 10 -

| Invoice Number | Invoice Date | Invoice Total | Last Approver | Sum in Accounting Currency | Supplier Name | Payment Document No. | Entry Date | Net Sum | Payment Date |
|---|---|---|---|---|---|---|---|---|---|
| N20111202 | 4/30/2013 | 500 | Eairinn Aska | 500 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 500 | 1/15/2014 |
| N20111203 | 4/30/2013 | 500 | Eairinn Aska | 500 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 500 | 1/15/2014 |
| N20111205 | 4/30/2013 | 1000 | Eairinn Aska | 1000 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 1000 | 1/15/2014 |
| N20111204 | 4/30/2013 | 1000 | Eairinn Aska | 1000 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 1000 | 1/15/2014 |
| N20111201 | 4/30/2013 | 1000 | Eairinn Aska | 1000 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 1000 | 1/15/2014 |
| N20111206 | 4/30/2013 | 1000 | Eairinn Aska | 1000 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 1000 | 1/15/2014 |
| 1 | 9/30/2013 | 500 | Eairinn Aska | 500 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 500 | 1/15/2014 |
| 2 | 11/11/2013 | 537.5 | Eairinn Aska | 537.5 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 537.5 | 1/15/2014 |
| 3 | 11/12/2013 | 537.5 | Eairinn Aska | 537.5 | HORGAN, INC | 2000637710 | 1/8/2014 15:20 | 537.5 | 1/15/2014 |
| 125 | 8/10/2014 | 7275.17 | Olivier Stip | 7275.17 | HORGAN, INC | 2000653087 | 10/24/2014 7:36 | 7275.17 | 10/29/2014 |
| 126 | 10/8/2014 | 550 | Eairinn Aska | 550 | HORGAN, INC | 2000654713 | 10/22/2014 18:09 | 550 | 11/25/2014 |
| 127 | 10/8/2014 | 750 | Eairinn Aska | 750 | HORGAN, INC | 2000654713 | 10/23/2014 14:10 | 750 | 11/25/2014 |
| CH201513 | 2/15/2015 | 900 | Eairinn Aska | 900 | HORGAN, INC | 2000664724 | 6/2/2015 14:30 | 900 | 6/3/2015 |
| CH20151 | 2/18/2015 | 8172.56 | Olivier Stip | 8172.56 | HORGAN, INC | 2000661638 | 3/24/2015 19:05 | 8172.56 | 4/8/2015 |
| CH20152 | 2/18/2015 | 7846.97 | Olivier Stip | 7846.97 | HORGAN, INC | 2000661638 | 3/24/2015 19:05 | 7846.97 | 4/8/2015 |
| CH201514 | 2/20/2015 | 975 | Olivier Stip | 975 | HORGAN, INC | 2000665061 | 6/3/2015 17:22 | 975 | 6/10/2015 |
| CH201510 | 4/15/2015 | 7450 | Olivier Stip | 7450 | HORGAN, INC | 2000664724 | 6/2/2015 16:44 | 7450 | 6/3/2015 |
| CH201511 | 4/20/2015 | 6750 | Olivier Stip | 6750 | HORGAN, INC | 2000665061 | 6/2/2015 16:44 | 6750 | 6/10/2015 |
| CH201515 | 5/1/2015 | 4381.16 | Olivier Stip | 4381.16 | HORGAN, INC | 2000665580 | 6/5/2015 13:05 | 4381.16 | 6/17/2015 |
| CH201512 | 5/1/2015 | 5000 | Olivier Stip | 5000 | HORGAN, INC | 2000665580 | 6/2/2015 16:44 | 5000 | 6/17/2015 |
| CH201516 | 6/3/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:56 | 1500 | 8/26/2015 |
| CH201517 | 6/10/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:57 | 1500 | 8/26/2015 |
| CH201518 | 6/17/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:57 | 1500 | 8/26/2015 |
| CH201519 | 6/24/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:57 | 1500 | 8/26/2015 |
| CH201520 | 7/1/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669631 | 9/1/2015 14:23 | 1500 | 9/2/2015 |
| CH201521 | 7/6/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:57 | 1500 | 8/26/2015 |
| CH201522 | 7/8/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:57 | 1500 | 8/26/2015 |
| CH201524 | 7/9/2015 | 5000 | Olivier Stip | 5000 | HORGAN, INC | 2000669330 | 8/25/2015 12:22 | 5000 | 8/26/2015 |
| CH201523 | 7/10/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000669330 | 8/25/2015 9:57 | 1500 | 8/26/2015 |
| CH201525 | 7/15/2015 | 1500 | Eairinn Aska | 1500 | HORGAN, INC | 2000671151 | 9/30/2015 9:40 | 1500 | 10/1/2015 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CH201526 | 7/18/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000671151 | 9/30/2015 9:40 | 1500 | 10/1/2015 |
| CH201527 | 7/22/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000671151 | 9/30/2015 9:40 | 1500 | 10/1/2015 |
| CH201528 | 7/25/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000671151 | 9/30/2015 9:40 | 1500 | 10/1/2015 |
| CH201529 | 7/29/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000671151 | 9/30/2015 9:40 | 1500 | 10/1/2015 |
| CH201530 | 8/5/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672204 | 10/19/2015 14:56 | 1500 | 10/21/2015 |
| CH201531 | 8/13/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672204 | 10/19/2015 14:56 | 1500 | 10/21/2015 |
| CH201532 | 8/19/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672204 | 10/19/2015 14:56 | 1500 | 10/21/2015 |
| CH201533 | 8/27/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672204 | 10/19/2015 14:56 | 1500 | 10/21/2015 |
| CH201534 | 9/4/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672204 | 10/19/2015 14:56 | 1500 | 10/21/2015 |
| CH201535 | 9/10/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672974 | 10/29/2015 7:40 | 1500 | 11/4/2015 |
| CH201536 | 9/17/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000672974 | 10/29/2015 8:32 | 1500 | 11/4/2015 |
| CH201537 | 9/24/2015 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000673252 | 10/29/2015 8:32 | 1500 | 11/11/2015 |
| 1105 | 11/5/2015 | 5000 Olivier Stip | 5000 HORGAN, INC | 2000676230 | 1/5/2016 15:39 | 5000 | 1/6/2016 |
| 1115 | 11/15/2015 | 9126 Olivier Stip | 9126 HORGAN, INC | 2000676230 | 1/5/2016 16:32 | 9126 | 1/6/2016 |
| 1130 | 11/30/2015 | 8500 Olivier Stip | 8500 HORGAN, INC | 2000677256 | 1/5/2016 16:32 | 8500 | 1/20/2016 |
| 115 | 1/15/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000679898 | 3/8/2016 13:16 | 1500 | 3/9/2016 |
| 120 | 1/20/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000679898 | 3/8/2016 13:16 | 1500 | 3/9/2016 |
| 129 | 1/29/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000680148 | 3/8/2016 13:16 | 1500 | 3/16/2016 |
| 130 | 1/30/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000680148 | 3/8/2016 13:16 | 1500 | 3/16/2016 |
| 415 | 4/15/2016 | 6957.75 Olivier Stip | 6957.75 HORGAN, INC | 2000686394 | 7/8/2016 13:43 | 6957.75 | 7/13/2016 |
| 505 | 5/5/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000686394 | 7/8/2016 13:43 | 1500 | 7/13/2016 |
| 515 | 5/15/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000686394 | 7/8/2016 13:43 | 1500 | 7/13/2016 |
| 520 | 5/20/2016 | 10641.75 Olivier Stip | 10641.75 HORGAN, INC | 2000686394 | 7/8/2016 13:43 | 10641.75 | 7/13/2016 |
| 730 | 7/30/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000691185 | 10/17/2016 15:18 | 1500 | 10/19/2016 |
| 810 | 8/1/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000690768 | 10/11/2016 15:16 | 1500 | 10/12/2016 |
| 815 | 8/15/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000690768 | 10/11/2016 15:16 | 1500 | 10/12/2016 |
| 830 | 8/30/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000691185 | 10/11/2016 15:22 | 1500 | 10/19/2016 |
| 910 | 9/1/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000691185 | 10/11/2016 15:22 | 1500 | 10/19/2016 |
| 915 | 9/15/2016 | 1500 Eairinn Aska | 1500 HORGAN, INC | 2000691891 | 10/11/2016 15:26 | 1500 | 11/2/2016 |
| 1225 | 12/25/2017 | 9800 Olivier Stip | 9800 HORGAN, INC | 2000715778 | 3/5/2018 16:07 | 9800 | 3/8/2018 |
| 1005 | 1/25/2018 | 8000 Olivier Stip | 8000 HORGAN, INC | 2000717144 | 4/3/2018 9:08 | 8000 | 4/4/2018 |
| 31518 | 3/15/2018 | 8750 Olivier Stip | 8750 HORGAN, INC | 2000719961 | 5/29/2018 7:39 | 8750 | 5/31/2018 |
| 33018 | 3/30/2018 | 5000 Olivier Stip | 5000 HORGAN, INC | 2000719961 | 5/29/2018 7:43 | 5000 | 5/31/2018 |
| 4118 | 3/30/2018 | 9500 Olivier Stip | 9500 HORGAN, INC | 2000719961 | 5/29/2018 7:43 | 9500 | 5/31/2018 |
| 51318 | 5/13/2018 | 7500 Olivier Stip | 7500 HORGAN, INC | 2000721366 | 6/19/2018 17:02 | 7500 | 6/27/2018 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 62018 | 6/20/2018 | 7500 Olivier Stip | 7500 HORGAN, INC | 2000725007 | 9/5/2018 15:36 | 7500 | 9/12/2018 |
| 70118 | 7/1/2018 | 7500 Olivier Stip | 7500 HORGAN, INC | 2000725007 | 9/5/2018 15:36 | 7500 | 9/12/2018 |
| 71518 | 7/15/2018 | 5000 Olivier Stip | 5000 HORGAN, INC | 2000725007 | 9/5/2018 15:48 | 5000 | 9/12/2018 |
| 80118 | 8/1/2018 | 9500 Eairinn Aska | 9500 HORGAN, INC | 2000726992 | 10/22/2018 13:28 | 9500 | 10/24/2018 |
| 81518 | 8/15/2018 | 7750 Eairinn Aska | 7750 HORGAN, INC | 2000726992 | 10/22/2018 13:28 | 7750 | 10/24/2018 |
| 101518 | 10/15/2018 | 7500 Eairinn Aska | 7500 HORGAN, INC | 2000730266 | 12/26/2018 7:30 | 7500 | 1/2/2019 |
| 103018 | 10/30/2018 | 9500 Eairinn Aska | 9500 HORGAN, INC | 2000730266 | 1/2/2019 10:56 | 9500 | 1/2/2019 |
| 113018 | 11/30/2018 | 14800 Eairinn Aska | 14800 HORGAN, INC | 2000731405 | 1/2/2019 20:06 | 14800 | 1/16/2019 |
| 121518 | 12/10/2018 | 10500 Eairinn Aska | 10500 HORGAN, INC | 2000732164 | 1/3/2019 20:44 | 10500 | 1/30/2019 |
| 22019 | 1/2/2019 | 9750 Eairinn Aska | 9750 HORGAN, INC | 2000733725 | 2/25/2019 9:25 | 9750 | 2/27/2019 |
| 212019 | 1/10/2019 | 4750 Eairinn Aska | 4750 HORGAN, INC | 2000733725 | 2/25/2019 9:25 | 4750 | 2/27/2019 |
| 1152019 | 1/15/2019 | 7306.44 Eairinn Aska | 7306.44 HORGAN, INC | 2000734122 | 2/25/2019 9:51 | 7306.44 | 3/6/2019 |
| 151 | 1/31/2019 | 9500 Eairinn Aska | 9500 HORGAN, INC | 2000735134 | 3/27/2019 7:48 | 9500 | 3/27/2019 |
| 153 | 2/15/2019 | 7500 Eairinn Aska | 7500 HORGAN, INC | | 3/27/2019 15:14 | 7500 | |
| | | | | | | | |
| | | $    318,257.80 | | | | | |